IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES S. THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 9 - 1432 |
| v. | ) | |
| | ) | Judge Fischer |
| OFFICER WILLIAMS, Probation Officer, | ) | Chief Magistrate Judge Lenihan |
| JESSICA WELCH, Probation Officer, | ) | |
| FAYETTE COUNTY ADULT PROBATION | ) | ECF Nos. 32 & 39 |
| OFFICE and FAYETTE COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

I. **RECOMMENDATION**

It is respectfully recommended that the Motion to Dismiss at ECF Nos. 32 & 39 be granted except as it relates to the claim of punitive damages against the individual Defendants Officer Williams and Jessica Welch in their personal capacities.

II. **REPORT**

A. **Procedural History**

Plaintiff, proceeding pro se, initiated this action by filing a Motion for Leave to Proceed in Forma Pauperis (ECF No. 1), which was granted by this Court on November 3, 2009. (ECF No. 2.) On November 4, 2009, Plaintiff filed his initial Complaint against Probation Officers Williams and Jessica Welch, the Fayette County Adult Probation Office, and Fayette County (collectively "Defendants"), alleging violations of his Fourth and Fourteenth Amendment rights. (ECF No. 3.)

Subsequent to a Motion to Dismiss filed by the Defendants (ECF No. 27), this Court granted Plaintiff leave to amend his Complaint. (ECF No. 29.) Plaintiff filed his Amended Complaint on September 4, 2012. (ECF No. 30.) On September 10, 2012, Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint, and Brief in Support of the Motion to Dismiss ("Brief.") (ECF Nos. 32 & 33). Again, this Court granted Plaintiff leave to file an Amended Complaint on October 17, 2012. On October 18, 2012, Plaintiff filed his Second Amended Complaint against the Defendants. (ECF No. 37.) In addition, on November 9, 2012, Plaintiff filed a Response to the Defendants' Motion to Dismiss Plaintiff's Amended Complaint. (ECF No. 38.)

Defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint on December 5, 2012 which is now ripe for disposition. Defendants did not file a new brief in support of the Motion to Dismiss and stand on the brief previously filed at ECF No. 33. Plaintiff re-filed his responsive brief (originally ECF No. 38) at ECF No. 41.

B. **Factual Allegations**

Plaintiff alleges the following in his Amended and Second Amended complaints[1] at ECF Nos. 30 and 37 respectively.

On November 9, 2010, the Court of Common Pleas of Fayette County, Pennsylvania, Criminal Division, entered an Order granting Plaintiff's motion to suppress. (Order, ECF No. 30-1 at 1.) In this proceeding, the Plaintiff, James Thompson ("Plaintiff" or "Thompson"), was a criminal defendant moving to suppress evidence which was obtained in a search of his apartment

---

[1] The Court considers both of these filings in light of the deferential pleading standard afforded pro se litigants discussed *infra* at Section II. C.

by Fayette County Probation Officers Williams and Welch (collectively "Probation Officers"). (Order, ECF No. 30-1 at 1, ECF No. 37 at 2.)

In January of 2009, the Probation Officers executed a search warrant for the home of Eunice Thompson-Leake ("Ms. Leake") in an effort to locate David Leake, an individual whom they had under their supervision. (ECF No. 37 at 2-3). The Probation Officers possessed a valid warrant to search the premises and believed "that [Plaintiff's] bedroom was included in the area they were entitled to search, but it was separately secured and locked, there was no search warrant, and no one gave consent to search." (Order, ECF No. 30-1 at 1.) The Probation Officers knew, however, that Ms. Leake had previously operated a personal care home, and that the premises had been adapted for separate rental use. (Order, ECF No. 30-1 at 1, ECF No. 37 at 2-3.) In fact, Plaintiff's room was considered a separately rented apartment, and was not subject to the search warrant, nor was consent ever given by Ms. Leake or the Plaintiff to enter the room. (Order, ECF No. 30-1 at 2, ECF No. 37 at 2.) Plaintiff avers that the statement made by Williams and Welch that they asked Ms. Leake to open Plaintiff's room prior to entry was false, and that they "opened the room on their own accord." (ECF No. 37 at 4.)

The Probation Officers found drug paraphernalia and a locked safe during the course of the search. (Order, ECF No. 30-1 at 2.) Both items were taken and a warrant to search the safe was later obtained by the Fayette County Drug Task Force. (Order, ECF No. 30-1 at 2.) Additional illegal contraband was found within the safe, and Plaintiff was subsequently charged. (Order, ECF No. 30-1 at 2.) At the Plaintiff's pretrial motion to suppress this evidence, the Court of Common Pleas of Fayette County held that the search warrant did not authorize a search of the Plaintiff's room, and that the Defendants did not have probable cause to enter; therefore, the evidence obtained as a result of the unlawful search was suppressed. (Order, ECF No. 30-1

at 2.) The State was not able to proceed and the charges against the Plaintiff were dismissed. (Order, ECF No. 30-1 at 2-3.)

Plaintiff states that this unlawful search constituted a violation of his Fourth and Fourteenth Amendment rights, and that his room was essentially "broken into" without his consent. Plaintiff alleges that the illegal search was primarily motivated by the Defendants' "evil intent with reckless and callous indifference to [his] federally protected rights." (ECF No. 37 at 6.) Specifically, Plaintiff avers that "[t]he probation officers conducting the search knew long ago that Mrs. Thompson-Leake had rooms for rent in the rental part of her home. And they knew just where the rental area was." (ECF No. 37 at 6.)

Plaintiff seeks declaratory relief, compensatory damages in the amount of $100,000, and punitive damages in the amount of $200,000. (ECF No. 37 at 7.)

C. **Legal Standards**

PRO SE PLEADINGS

The Court must liberally construe the factual allegations of Plaintiff's Amended and Second Amended Complaint because pro se pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations omitted); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Further, Federal Rule of Civil Procedure 8(e) requires that all pleadings be construed "so as to do justice." Fed.R.Civ.P. 8(e).

MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly* at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id*. (citing *Twombly* at 556-57). The court of appeals has expounded on this standard in light of its decision in *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and the Supreme Court's recent decision in *Iqbal*:

> After *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. See Id. at 1949-50; see also *Twombly*, 505 U.S. at 555, & n. 3.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In light of *Iqbal*, the *Fowler* court then set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim. First, the district court must accept all well-pleaded facts as true and discard any legal conclusions contained in the complaint. *Fowler*, 578 F.3d at 210-11. Next, the court must consider whether the facts alleged in the Complaint sufficiently demonstrate that the plaintiff has a "plausible claim for relief." *Id*. at 211. To survive a motion to dismiss, a complaint must show an entitlement to relief through its facts. *Id*. (citing *Phillips* at 234-35).

Courts generally consider only the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). Factual allegations within documents described or identified in the complaint may also be considered if the plaintiff's claims are based upon those documents. *Id*. A district court may consider these documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426 (3d Cir. 1997).

D. **Analysis**
   1. **Eleventh Amendment Immunity[2]**

In support of their Motion to Dismiss, Defendants raise several arguments. First, Defendants argue that Plaintiff's claims against the Fayette County Department of Adult Probation and Parole ("Department") and its officers in their official capacities are barred by the State's Eleventh Amendment sovereign immunity. (ECF No. 33 at 6.) The Plaintiff responds that the Eleventh Amendment does not provide any protection because the probation officers

---

[2] A Rule 12(b)(1) motion is the proper vehicle for asserting Eleventh Amendment immunity because the Eleventh Amendment "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n. 2 (3d Cir. 1996).

employed by the Department acted with "evil motive or intent" with reckless disregard to Plaintiff's federally protected rights. (ECF No. 38 at 2.)

a. **Fayette County Department of Adult Probation and Parole**

Under the Eleventh Amendment, States are immune from suits for damages by individual citizens. *Coleman v. Court of Appeals of Maryland,* 132 S. Ct. 1327, 1333 (2012). This immunity extends to arms of the state, such as state and county agencies which have no separate existence from the state itself. *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981). The United States Court of Appeals for the Third Circuit has held that county probation and parole offices are part of Pennsylvania's judicial system which is considered an arm of the state, and are thus entitled to Eleventh Amendment immunity. *Haybarger v. Lawrence Cnty. Adult Prob. & Parole,* 551 F.3d 193, 198 (3d Cir. 2008). *See also Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 240 (3d Cir. 2005) (quoting *Callahan v. City of Phila.,* 207 F.3d 668, 672 (3d Cir. 2000)) ("[T]he Pennsylvania constitution provides for the vesting of the Commonwealth's judicial power in a 'unified judicial system' which includes all of the courts in Pennsylvania. . . . All courts and agencies of the unified judicial system . . . are part of 'Commonwealth government' and thus are state rather than local agencies.") (internal citations omitted).

The Supreme Court has identified only three instances in which an individual may sue a state: (1) congressional abrogation of immunity; (2) consent by the state; and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law. *Price v. Roberts*, Civil Action No. 10-1574, 2011 WL 1877823, at *8 (W.D. Pa. May 16, 2011) (quoting *Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002)). None of these conditions are present here. Furthermore, the Commonwealth of Pennsylvania has expressly chosen to generally reserve its right of sovereign

immunity. *See* 1 Pa. C.S.A. § 2310. *See also* 42 Pa. C.S.A. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."). The legislature specifically enumerated nine areas[3] in which the Commonwealth chooses to waive its sovereign immunity; however, Plaintiff's claim does not fall within these narrow exceptions. 42 Pa. C.S.A. § 8522(b).

Additionally, the federal courts have repeatedly held that Congress did not abrogate the States' Eleventh Amendment immunity when it enacted § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."); *Boykin v. Bloomsburg Univ. of Pa.*, 893 F. Supp. 378, 394 (M.D. Pa. 1995) (holding that States' immunity has not been abrogated for actions brought under §§ 1981, 1983, 1985, and 1986), *aff'd*, 91 F.3d 122 (3d Cir. 1996). Furthermore, the courts and other state agencies are not considered "persons" who can be subjected to liability under § 1983. *Will,* 491 U.S. at 71.

None of the factual allegations in Plaintiff's Amended and Second Amended Complaints indicate that the Commonwealth of Pennsylvania, or the Fayette County Department of Adult Probation and Parole have consented to be sued. Because the Commonwealth has not consented to suit, and Plaintiff's claims do not fall within any of the statutory exceptions to consent, the

---

[3] The statutory exceptions are as follows: (1) Vehicle liability; (2) Medical-professional liability; (3) Care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) Potholes and other dangerous conditions; (6) Care, custody or control of animals; (7) Liquor store sales; (8) National Guard activities; and (9) Toxoids and vaccines.

claims against the Department must be dismissed. Any further attempt to amend the Second Amended Complaint would be futile as a matter of law.[4]

> b. **Officers Williams and Welch**

Eleventh Amendment immunity also acts as a bar to the suits against Officers Williams and Welch in their official capacities. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71. Given the fact that sovereign immunity applies in the suit against the Department, this immunity would extend to all claims against the individual Defendants in their official capacities. *See Slinger v. New Jersey*, 366 F. App'x 357, 360 (3d Cir. 2010) (holding that sovereign immunity extends to employees of a state agency sued in their official capacity). Officers Williams and Welch are immune from suit in their official capacities; therefore, Plaintiff's claims against them must be dismissed. Any further attempt by Plaintiff to amend his Second Amended Complaint would be futile as a matter of law.

2. **Dismissal of Fayette County**

Defendants' second argument is that the claim against Fayette County should be dismissed because Fayette County is not responsible for the operation of the Department of Probation and Parole. Further, Plaintiff fails to allege any facts specific to Fayette County that would be sufficient to state a claim. (ECF No. 33 at 8.) Plaintiff responds with the same argument put forth in opposition to Eleventh Amendment immunity: Defendants' "evil motive or

---

[4] The United States Court of Appeals for the Third Circuit in *Phillips v. County of Allegheny* has ruled that if a district court is dismissing a claim pursuant to Fed. R. Civ. P. 12(b)(6) in a civil rights case, it must *sua sponte* "permit a curative amendment unless such an amendment would be inequitable or futile." 515 F.3d 224, 245 (3d Cir. 2008).

9

intent" with reckless disregard to Plaintiff's federally protected rights, would serve as the basis of liability for Fayette County. (ECF No. 38 at 3.)

As discussed in Section II. D. 1., *supra*, all courts and associated agencies in Pennsylvania are part of the Commonwealth government, and are considered state, rather than local (i.e. county) agencies. *Benn*, 426 F.3d at 240. The Third Circuit directly addressed the question of whether offices of probation and parole are considered state or local agencies. In *Haybarger,* the court held that individual judicial districts and its associated offices of probation and parole are all considered arms of the state for purposes of Eleventh Amendment Immunity. *Haybarger,* 551 F.3d at 198. Given this holding, Fayette County cannot be held accountable for the actions of a state entity and its agents over which it has no control.

Even if Fayette County were responsible in some way for the administration of the office of probation and parole, Plaintiff has failed to allege any facts whatsoever that would suggest that Fayette County in some way participated in the facts giving rise to Plaintiff's claims. In a §1983 claim, a plaintiff must avers facts that show defendant had some personal involvement in the alleged harm to the plaintiff. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). A defendant will not be held liable on the basis of respondeat superior. *Monell v. Dep't of Soc. Serv. of City of New York,* 436 U.S. 658, 694 (1978). Where the defendant is a municipal entity, a §1983 plaintiff must aver facts showing that the agency or organization promulgated a policy or custom that caused the alleged injury. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). *See also Monell,* 436 U.S. at 694 (holding that an injury must be the result of a policy officially enacted by the agency, or a custom that is so pervasive within the organization that it effectively has the force of law.)

In his Amended and Second Amended Complaints, Plaintiff fails to even mention Fayette County by name, other than the fact that he included it in the original caption. (ECF No. 3.) As Defendants note in their brief, it is unclear as to whether Plaintiff is even pursuing a claim against the county. Regardless, Plaintiff avers no facts that would point toward the creation or administration of a custom or policy by Fayette County that was the cause of his alleged injury. To survive a motion to dismiss, Plaintiff must allege sufficient facts to demonstrate a "plausible claim for relief." *Twombly*, 550 U.S. at 556. Here, the Plaintiff has failed to meet this standard and any further attempt to amend would most certainly be futile. Hence, Defendants' Motion to Dismiss as it relates to Fayette County should be granted.

2. **Claim for Punitive Damages**

The Defendants next argue that the punitive damages claim as to Fayette County, the Department of Probation and Parole, and Officers Williams and Welch in their official capacities fails as a matter of law, because punitive damages may not be imposed on a municipal entity. (ECF No. 33 at 9.) Defendants further argue that Plaintiff's claim for punitive damages against the Defendants in their personal capacities fails as well because punitive damages may only be awarded for outrageous conduct, motivated by reckless or evil intent. (ECF No. 33 at 10.) Plaintiff responds that punitive damages are applicable to all parties based on Defendants' "evil motive or intent" with reckless disregard to Plaintiff's federally protected rights. (ECF No. 38 at 3.)

It is well settled that municipal entities are immune from punitive damages pursuant to §1983. *City of Newport v. Fact Concerts, Inc*., 453 U.S. 247, 271 (1981). *See also Vermont Agency of Natural Res. v. U.S. ex rel. Stevens,* 529 U.S. 765, 784-85 (2000) (holding punitive damages inappropriate in suits against governmental entities); *Bolden v. Southeastern Pa.*

*Transp. Auth.,* 953 F.2d 807, 830 (3d Cir. 1991) (holding municipalities immune from punitive damages under § 1983); *Malone v. Econ. Borough Mun. Auth.*, 669 F. Supp. 2d 582, 612 (W.D. Pa. 2009) ("Section 1983 precludes punitive damages against a municipality.")

Based on the nature of §1983 claims, the immunity from punitive damages would naturally extend to any state or municipal actors sued in their official capacities. As noted above, a "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71. *See also Brandon v. Holt*, 469 U.S. 464, 471 (1985). Therefore, a suit against a government employee in his or her official capacity is no different than a suit against the governmental entity itself. *Will,* 491 U.S. at 71. Hence, punitive damages are not available against individual state actors sued in their official capacity.

Even if punitive damages were not barred as a matter of law against any of the above defendants, the claims against the Department of Probation and Parole and the Officers in their official capacities have already been set aside on Eleventh Amendment sovereign immunity grounds. *See* Section II. D. 1., *supra*. Additionally, the claim against Fayette County should also be dismissed. *See* Section II. D. 2., *supra*. Because these underlying claims fail as a matter of law, there can be no valid claim for punitive damages against any of these defendants.

As to the punitive damages claim against Officers Williams and Welch in their personal capacities, the Defendants state in their brief that punitive damages are only appropriate when it can be shown that the defendant's conduct is motivated "by evil motive or intent, or involves reckless or callous indifference to the federally protected rights of others." (ECF No. 33 at 10.) Defendants argue that Plaintiff has failed to allege sufficient facts to support this claim. Conversely, Plaintiff avers that the Probation Officers knew that his room was a separately

rented unit that was not subject to the scope of the search warrant. Despite this knowledge, the Probation Officers forcefully entered and searched Plaintiff's room without his or Ms. Leake's consent. (ECF No. 30 at ¶ 6-7.)

Both parties correctly state the standard for assessing punitive damages in §1983 claims. In *Smith v. Wade*, the Supreme Court held that "a jury may be permitted to assess punitive damages . . . when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." 461 U.S. 30, 56 (1983). The question of whether a defendant's conduct rises to the level of recklessness or callous indifference is a question for the finder of fact. *Id. See also Malone*, 669 F. Supp.2d at 612.

The standard for judging reckless indifference is not "the egregiousness of the [defendant's] conduct, but rather [] the [defendant's] knowledge that it may be acting in violation of federal law." *Alexander v. Riga*, 208 F.3d 419, 430 (3d Cir. 2000) (quoting *Kolstad v. Amer. Dental Ass'n*, 572 U.S. 526, 535 (1999)). In *Adickes v. S. H. Kress & Co.*, Justice Brennan stated the following:

> To recover punitive damages, I believe a plaintiff must show more than a bare violation of [§] 1983. On the other hand, he need not show that the defendant specifically intended to deprive him of a recognized federal right . . . . It is sufficient for the plaintiff to show either that the defendant acted . . . with actual knowledge that he was violating a right "secured by the Constitution and laws," or that the defendant acted with reckless disregard of whether he was thus violating such a right.

398 U.S. 144, 233 (1970) (internal citations omitted). *See also Savarese v. Agriss,* 883 F.2d 1194, 1204 (3d Cir. 1989) ("[F]or a plaintiff in a section 1983 case to qualify for a punitive award, the defendant's conduct must be, at a minimum, reckless or callous. Punitive damages

might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard.")

Defendants argue that the facts alleged by the Plaintiff, even if taken as true, are insufficient to allow a punitive damages claim against the Probation Officers in their individual capacities. They contend that because the Probation Officers were in possession of a valid warrant to search the home of Ms. Leake, the illegal search of the Plaintiff's room was nothing more than a permissible mistake. (ECF No. 33 at 11.) The issue here is not whether the Probation Officers were entitled to a reasonable mistake when executing the search warrant, which they were,[5] but rather, whether they knew that they were exceeding the scope of the warrant when they searched the Plaintiff's room, thus violating his federally protected rights.

In *Maryland v. Garrison*, the Supreme Court dealt with a similar issue. In that case, police officers entered the apartment of a criminal suspect pursuant to a valid search warrant, which gave them permission to search the entire third floor apartment. 480 U.S. 79, 80 (1987). During the course of the search the officers uncovered illegal contraband. *Id.* The officers subsequently realized that the third floor actually consisted of two separate rental units, and that the contraband was found in a room being rented to an individual who was not subject to the terms of the search warrant. *Id.* The Court stated that if "the officers had known, or should have known" that the floor was divided into separate apartments before they entered the premises, then the officers would have been obligated to limit their search to just the one apartment. *Id.* at 86.

---

[5] *See Illinois v. Rodriguez*, 497 U.S. 177, 197 (1990) (An officers' reasonable mistake of fact does not render a search unreasonable.); *Brinegar v. United States*, 338 U.S. 160, 176 (1949) ("Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability.")

14

*Maryland* can be distinguished from the facts alleged here in that the Court found that the officers' failure to realize that the third floor was divided into separate rental units was objectively reasonable because there was no set of facts available to them that would have suggested otherwise. *Id.* at 88. In the instant case, Plaintiff avers that the Probation Officers were fully aware that Ms. Leak rented rooms in her home to other individuals. (ECF No. 30 at ¶ 6.) Accepting these facts as true, the Probation Officers would have been required to exclude from their search any rooms being rented separately to individuals not specified in the terms of the search warrant. *Maryland,* 480 U.S. at 86. Based on the standard set forth in *Alexander,* Plaintiff has averred enough facts to plausibly demonstrate that the Probation Officers knew that they may be acting in violation of federal law. That is, Plaintiff has averred facts that the Probation Officers were fully aware that "many of the rooms in Mrs. Thompson-Leake's house had been used previously as a personal care home, and the various bedrooms were adapted for separate rental use . . . ." (ECF No. 30 at ¶ 6.) Consequently, the Court recommends that Defendants' Motion to Dismiss Plaintiff's claim for punitive damages against the individual Defendants in their personal capacities be denied.

III. **CONCLUSION**

For the above reasons, it is respectfully recommended that the Motion to Dismiss at ECF Nos. 32 & 39 be granted except as it relates to the claim of punitive damages against the individual Defendants Officer Williams and Jessica Welch in their personal capacities.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule of Court 72.D.2., the parties are allowed fourteen (14) days from the date of service to file objections to this Report and Recommendation. Any party opposing the objections shall

have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

May 3, 2013

**BY THE COURT:**

_____
LISA PUPO LENIHAN
Chief United States Magistrate Judge

cc: All Counsel of Record
Via Electronic Mail

James S. Thompson
JS-4542
S.C.I. Dallas
1000 Follies Road
Dallas, PA 18612